**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel T. Romero, | No. CV-20-02387-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Daniel T. Romero's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 7), Defendant Social Security Administration Commissioner's Response Brief (Doc. 23), and Plaintiff's Reply Brief (Doc. 24). The Court has reviewed the briefs, Administrative Record (Doc. 14, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 14-29) and affirms the ALJ's decision for the reasons addressed herein.

## I.    BACKGROUND

Plaintiff protectively filed an application for DIB on September 27, 2017, for a period of disability beginning on January 23, 2017. (R. at 14). Plaintiff's claims were denied initially on March 6, 2018, and upon reconsideration on May 30, 2018. (*Id.*) Plaintiff testified before an ALJ in a hearing regarding his claims on March 11, 2020. (*Id.*) The ALJ

1   denied his claims on June 23, 2020. (R. at 14-29). On October 8, 2020, the Appeals Council
2   denied his request for review of the ALJ's decision. (R. at 1-6). On December 9, 2020,
3   Plaintiff filed this action seeking judicial review. (Doc. 1).

4          The Court has reviewed the medical evidence in its entirety and finds it unnecessary
5   to provide a complete summary here. The pertinent medical evidence will be discussed in
6   addressing the issues raised by the parties. In short, upon consideration of the medical
7   records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe
8   impairments of hypertension, right ankle fracture, cervical degenerative disc disease,
9   cervical radiculitis, lumbar radiculopathy, and lumbar degenerative disc disease. (R. at 17).

10         Ultimately, the ALJ evaluated the medical evidence and opinions and concluded
11  that Plaintiff was not disabled. (R. at 29). The ALJ found that Plaintiff did "not have an
12  impairment or combination of impairments that meets or medically equals the severity of
13  one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 20). Next,
14  the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light
15  work as defined in 20 CFR 404.1567(b)" with certain function limitations and concluded
16  that Plaintiff "is capable of making a successful adjustment to other work that exists in
17  significant numbers in the national economy." (R. at 21, 29).

18  **II.    LEGAL STANDARD**

19         In determining whether to reverse an ALJ's decision, the district court reviews only
20  those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,
21  517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability
22  determination only if the determination is not supported by substantial evidence or is based
23  on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is
24  more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable
25  person might accept as adequate to support a conclusion considering the record as a whole.
26  *Id*. To determine whether substantial evidence supports a decision, the court must consider
27  the record as a whole and may not affirm simply by isolating a "specific quantum of
28  supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more

1   than one rational interpretation, one of which supports the ALJ's decision, the ALJ's
2   conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).
3   (citations omitted).

4         To determine whether a claimant is disabled for purposes of the Act, the ALJ
5   follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof
6   on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v.*
7   *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
8   the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b).
9   If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines
10  whether the claimant has a "severe" medically determinable physical or mental
11  impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry
12  ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or
13  combination of impairments meets or medically equals an impairment listed in Appendix
14  1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is
15  automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step
16  four, the ALJ assesses the claimant's RFC and determines whether the claimant is still
17  capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not
18  disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where
19  she determines whether the claimant can perform any other work in the national economy
20  based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g).
21  If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

22  **III.   ANALYSIS**

23        Plaintiff raises three arguments for the Court's consideration: (1) the ALJ
24  erroneously rejected Plaintiff's symptom testimony; (2) whether the ALJ properly
25  considered the assessment of treating practitioner, Dr. Sparks, and (3) the ALJ failed to
26  find Plaintiff's headache disorder severe. (Doc. 17 at 1). Plaintiff also requests this Court
27  to remand the case for an award of benefits. (*Id*. at 24-25).

28

1

2

3

**A.      The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 17 at 20-24.)

4

5

6

7

8

9

10

11

12

13

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for

28

discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's physical impairments encompassing hypertension, right ankle fracture, cervical degenerative disc disease, cervical radiculitis, lumbar radiculopathy, and lumbar degenerative disc disease. (R. at 17). Plaintiff asserted that he had chronic neck and back pain with limited range of motion in his neck and experienced headaches due to the neck pain along with back pain that radiated down his legs. (R. at 21). Plaintiff testified he can sit for about 45 minutes, stand for about 45 minutes and walk for only five to ten minutes before needing to rest, and he can lift and carry about one gallon. (R. at 22). He further testified that he could do household chores like washing dishes but needs to take breaks, and he has become more tolerant to his prescribed narcotic medication over time. (*Id.*)

The ALJ considered the level of Plaintiff's medical issues and found that, "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (*Id.*) The ALJ then cited to specific examples in the record to support her findings. Plaintiff, however, argues that this Court has rejected the standard used by the ALJ to discount Plaintiff's symptom testimony by finding it not consistent with the medical evidence, and that a Plaintiff does not need to provide evidence of the severity of those symptoms. (Doc. 17 at 22.) The Court does not agree with Plaintiff's arguments. The Court has not rejected the standard used by the ALJ as Plaintiff has alleged. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount his testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

With respect to Plaintiff's neck and back impairments, the ALJ provided an extensive medical summary in her findings addressing Plaintiff's issues and the treatments

Plaintiff underwent for pain related to those issues. A March 2016 CT scan of Plaintiff's cervical spine showed mild disc degeneration, mild to moderate spinal cord flattening and mild to moderate stenosis. (R. at 22, 1101-02). X-rays from December 2016 of Plaintiff's cervical spine were normal. (*Id*., 759). An MRI from August 2019 showed mild degenerative disc disease, moderate to severe narrowing of neural foramen, moderate facet degeneration associated with mild marrow edema, and the cervical cord was normal with no signs of abnormalities. (R. at 23, 904). The ALJ also highlighted treatment notes indicating Plaintiff had tenderness to palpation over cervical muscles, decreased range of motion, decreased sensation to light touch in bilateral upper extremities; however, he maintained normal strength and a slow, but normal gait and could move around the exam room easily. (R. at 22-23, 1126, 1291,1294,1297,1300,1309, 1355).

Plaintiff also alleged disability due to right ankle pain and hypertension. Plaintiff fractured his right ankle during an accident involving a fall in February 2015. (R. at 22, 1033). Plaintiff returned to work after sustaining the injury and the ALJ found there was no objective imaging evidencing the fracture did not heal or any other degenerative changes. (R. at 22). In 2018, Plaintiff exhibited some tenderness and limited range of motion during exams, but treatment notes from March 2020 indicate Plaintiff reported the pain only mildly interfered with his walking, and Plaintiff maintained a slow, normal gait. (R. at 22, 1128, 1291, 1294). In reviewing the Plaintiff's hypertension claims, the ALJ's findings exhibited evidence of elevated blood pressure at Plaintiff's onset date with a report that Plaintiff occasionally felt his heart racing, but other treatment notes show Plaintiff's blood pressure was stable with medication and Plaintiff denied cardiac symptoms during examinations in 2020. (*Id*., 909, 911). Plaintiff also testified at the hearing that his blood pressure was controlled with medication. (R. at 49-50).

Based upon the number of examples cited from the medical evidence within the record, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms inconsistent with the medical evidence. (R. at 22). As Plaintiff argued, he did not need to provide evidence of the severity of those symptoms,

but the ALJ is also not required to believe every allegation of disabling pain. Although Plaintiff experienced improvements, the ALJ did, however, consider Plaintiff's allegations of pain in determining his RFC. Given those allegations, the ALJ specified a series of physical restrictions applicable to Plaintiff within a job setting when the ALJ made her findings of Plaintiff's RFC. The ALJ ultimately found that Plaintiff could not return to his past relevant work. The ALJ concluded, "[t]here is no question the [Plaintiff's] impairments prevent him from performing his past work, which was at the heavy exertional level…However, his impairments do not preclude all work." (R. at 22). The ALJ found Plaintiff could perform light work with noted limitations and there were jobs available that could comply with Plaintiff's needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied her discussion of the medical evidence regarding Plaintiff's physical issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

The ALJ also relied upon the effectiveness of the treatment plans for Plaintiff's impairments. The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff took part in pain management for several years prior to his alleged onset date. (R. at 25, 1029-32, 1043-1104). Medications seemed to be working well and his use of a muscle relaxant was reduced. (*Id.*, 803, 1259). Plaintiff attended a rehabilitation program for opioid dependence requested by his employer. (*Id.*, 797, 800, 1107-1125,1242). Plaintiff

resumed varying degrees of opioid use in June 2017 and his functioning improved and by March 2020, Plaintiff's pain management provider reported pain relief and a better quality of life and functionality for Plaintiff. (*Id.*, 788, 879, 1340). Plaintiff also underwent steroid injections in 2016 and 2017 and reported the injections provided about 60 percent relief from pain. (R. at 23, 1193). Plaintiff received physical therapy and reported he felt stronger with improved range of motion with no signs of pain during exercises. (*Id.*, 800, 936, 1193). Plaintiff received additional steroid injections in 2020 that he reported provided him with more than 80 percent relief, and he also received trigger point injections. (R. at 24, 1130). Plaintiff testified that he discussed surgery with his doctors, but they told him he was not a viable candidate for surgery because there was not enough stenosis. (R. at 55-56). Based upon the medical evidence, Plaintiff exhibited improvement with his prescribed treatment plans.

In consideration of Plaintiff's daily living activities, the ALJ cited that Plaintiff was taking care of his house. (R. at 25). Plaintiff testified that he would try to do things around the house like prepare meals and chores like washing the dishes, but he would have to take breaks. (R. at 54). Plaintiff's function report indicated that he attended to his personal hygiene unassisted, prepared simple meals, watched TV and spent time with others. (R. at 593). Plaintiff further testified that he drives and originally stated he drove his daughter to school daily in the morning and returned home, but Plaintiff then modified his testimony stating that he drove his daughter to school three times a week and his father-in-law assisted him with this task. (R. at 43-44). The ALJ cited that Plaintiff reported caring for his two young children which included attending to their personal care, preparing their meals, and feeding them. (R. at 25, 593). Plaintiff stated during a February 2017 examination that "[h]e still wants to work although has been enjoying being home with his 8 mo and 5 yo children. He does admit that it is hard work taking care of them and the house." (R. at 25, 803). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they

suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as he alleged was reasonable. If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security). Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the effectiveness of Plaintiff's treatments for his impairments, and Plaintiff's daily activities to discount Plaintiff's symptom testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's claims and those reasons were supported by substantial evidence.

**B.     The ALJ properly considered the medical opinion evidence of Lisa Sparks, MD.**

Plaintiff's next argument suggests the ALJ erred in her assessment of pain management specialist, Lisa Sparks, MD's, opinion. Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and

1
2
3
4

> prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

5   20 C.F.R. § 416.920c.[1]

6       The regulations define "medical opinion" as "a statement from a medical source
7   about what you can still do despite your impairment(s) and whether you have one or more
8   impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other
9   medical evidence" that an ALJ considers as part of the Administrative Record is defined
10  as "evidence from a medical source that is not objective medical evidence or a medical
11  opinion, including judgments about the nature and severity of your impairments, your
12  medical history, clinical findings, diagnosis, treatment prescribed with response, or
13  prognosis." 20 C.F.R. § 416.913(a)(3).

14      The new regulations also expand the definition of acceptable medical sources.
15  "Medical source means an individual who is licensed as a healthcare worker by a State and
16  working within the scope of practice permitted under State or Federal law." 20 C.F.R.
17  § 404.1502 (d). Specifically, a "Licensed Advanced Practice Registered Nurse, or other
18  licensed advanced practice nurse with another title," and a "Licensed Physician Assistant"
19  are considered acceptable medical sources "for impairments within his or her licensed
20  scope of practice." *Id.* at (a). The regulations require an ALJ to articulate how persuasive
21  they find all the medical opinions and prior administrative medical findings and set forth
22  specific "articulation requirements" for the ALJ's evaluation of the medical opinion
23  evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

24      Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security
25  Administration's regulations displace our longstanding case law requiring an ALJ to
26  provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion."

27
28  [1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

*Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792.

In the present case, Dr. Sparks submitted two medical questionnaires in May and June 2017 that appear to be for Plaintiff's human resources office and privately held long-term disability insurance coverage. (R. at 326-328, 330-332). Dr. Sparks opined that Plaintiff could sit for two hours, walk for two hours and stand for two hours and needed frequent breaks; could never bend, stoop, climb push or pull; could occasionally lift and carry up to ten pounds, and was unable to do activities like raking, lifting heavy objects, drive equipment, and pick up trash because he could not look down. (*Id.*) The ALJ found Dr. Sparks's opinions to be unpersuasive. (R. at 26).

Multiple treatment notes from Dr. Sparks's own examinations of Plaintiff suggest other findings contrary to what was submitted in the forms. Dr. Sparks observed on several visits that Plaintiff had normal gait, raised easily from his chair, moved easily about the office and no assistive devices were used. (R. at 861, 868, 871, 874). Treatment notes from Dr. Sparks also indicate that Plaintiff's pain level was at 3-5/10 on average. (R. at 860, 867). The ALJ noted that evidence from other medical sources indicated Plaintiff maintained full strength during his examinations which was not consistent with a ten-pound limitation for lifting or carrying as opined by Dr. Sparks. (R. at 1291, 1294, 1297, 1300, 1309, 1315, 1355). The ALJ also noted that Plaintiff was not in any acute distress with use of his prescribed medication. (R. at 26). Treatment notes indicate Plaintiff felt his

medication provided "adequate pain relief as well as providing a better quality of life and functionality given his chronic pain state." (R. at 1127, 1314, 1348). Additionally, the ALJ found the two-hour walking and standing recommendation by Dr. Sparks not consistent with recent examinations which suggested Plaintiff's pain only mildly interfered with his walking. (R. at 26, 860, 870, 1127). Plaintiff also revealed to Dr. Sparks that he was taking care of his eight-month-old and five-year-old children at home and has enjoyed being home with them despite the hard work. (R. at 803). Moreover, Dr. Sparks was aware that Plaintiff took part in activities like putting a bed together for his children and conducted chores around the house like mopping or picking up the yard. (R. at 867, 870). Considering the above factors, the ALJ found that Dr. Spark's opinion lacked support in the record and was unpersuasive.

It is clear to the Court that the ALJ cited to specific examples in the medical record that were inconsistent with Dr. Spark's opinion of Plaintiff's limitations. The ALJ fully articulated how persuasive she found all the medical opinions from each source. It is apparent from the record that the ALJ provided substantial evidence to sufficiently support her decision. Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**C.    The ALJ did not err in considering Plaintiff's headache allegations.**

Plaintiff's two paragraph argument on this issue states that he answered a headache questionnaire which claimed his headaches interfered significantly with his daily activities and DDS reviewers found Plaintiff's headaches were a severe impairment, but the ALJ failed to explain why she rejected this finding while simultaneously finding the DDS opinions persuasive. (Doc. 17 at 25). Again, the Court is not persuaded by Plaintiff's argument.

The ALJ clearly considered Plaintiff's headache allegations and the questionnaire that was submitted for review. (R. at 18). However, the Plaintiff told the DDS examiner

that headaches had greatly improved, and they were only intermittent in 2019. (R. at 18, 889). The ALJ found that the medical evidence in the record failed to show Plaintiff underwent any treatment for headaches or neurological deficits, and therefore, the ALJ found this impairment had a minimal effect on Plaintiff's ability to work. (R. at 18). The burden of proof is on the Plaintiff at step two when an ALJ determines if a severe impairment exists, and Plaintiff failed to meet that burden. An ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Moreover, Plaintiff's argument carries little weight because ultimately, the DDS reviewers found that despite a possible headache impairment, Plaintiff could still work and was not disabled. (R. at 87, 105). Even if it was deemed that the ALJ should have listed this particular impairment as severe, it would not change the outcome of the ALJ's disability findings and is therefore harmless error. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination).

## IV.   CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 19th day of January, 2023.

_____
Honorable John J. Tuchi
United States District Judge